IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-00831-MJW-BNB

DAVID H.  LYNCH,

Plaintiff,

v.

JOHN E.  POTTER, Postmaster General,

Defendant.

---

**ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Docket No. 38)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to the undersigned upon consent of the parties for all

further proceedings pursuant to 28 U.S.C. § 636(c).  (Docket No. 31).

<u>**Plaintiff's Allegations**</u>

Pro se plaintiff David H. Lynch asserts that the defendant terminated him

because of his race, age, and disability and in retaliation for his previous "eeo" activity in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et.*

*seq.*, and apparently the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 706 *et*

*seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq.*

In his Amended Complaint (Docket No. 6), plaintiff asserts the following.  He was

terminated from the U.S. Postal Service at the age of 51 and was treated differently

from the other carriers in the Highlands Ranch Post Office because he "simply forgot" to

2

retrieve undeliverable mail.  Both the Employee Assistance Program counselor and a

Kaiser Permanente doctor agreed that for someone over 50 to forget something as

simple as picking up something while your mind is on the next task at hand is typical

and age appropriate.  He had never had any discipline for forgetting any aspect of his

job.  Nothing had happened to him when he forgot his key or scanner and had to return

to the post office.  According to plaintiff, "[f]orgetting is part of getting old!"  (Docket No.

6 at 7).  Management did not follow the collective bargaining agreement which calls for

first a verbal warning, then a written warning, then a two-week suspension, then one-

year probation, then two-year probation, and finally, firing.

In addition, two minorities were treated more favorably than plaintiff.  Plaintiff

states:

> The 2nd aspect of race occurs in several forms; both Ricardo Saenz and
> Eric Ford are minorities and were treated way most favorably than myself.
> Unless directly stated race favoritism has to be assumed by actions.  If
> Eric Ford (black) unsorted all his BBM mail and placed it in the No
> Obvious Value Mail (NOVM) to be tossed by the clerks isn't that showing
> preference, because that's how he was trained.  Mr. Saenz goes about the
> office, stating "blame it on the Mexicans," whenever things are in turmoil.
> Mrs. Sullivan is a people of mixed blood (white/native Aman [sic]) married
> to a black man (supposedly).  From the way she treats white males vs.
> black their [sic] is predjuice [sic].  She could be seen socializing with Jim
> (?) Janitor & Louvie Barnard (both black) @ work while barely speaking to
> the white employees.  She was involved in denying hire 11/94, in original
> E.E.O. (95-96) in calling me in for questioning on being a "dead beat dad"
> spring 2000, now claiming I'm a menace to myself and others 8/2004.

(Docket No. 6 at 8).

Next, plaintiff alleges a "physical/emotional disability," stating:

> My physical/emotional disability was even stated by Mrs. Sullivan before 4
> or 5 witnesses.  You've been reported depressed so are a menace to
> yourself and those that work with you.  How could I report my depression
> to management when they kicked me out of the building, "don't report to

work until told to do so." Dr. Reaven called this "environmental caused depression." I went to work on June 26 and expect to work, instead I was suspended. I couldn't believe such a simple mistake (forgetting soup) had turned into such a mess. I didn't eat, sleep or function 'normally.' The following week I got a message from R. Saerz that if I didn't come get my other mail delivery vehicle & personal stuff (locker and letter case) it was going in the trash. They were going to fire me without even an investigative interview per Collective Bargaining Agreement.

(Docket No. 6 at 8).

Finally, plaintiff complains of retaliation, claiming it

took several forms. What would a reasonable person do if they forgot "their" mail. Leave it and tell that person tough luck or do the right thing and retrieve it. <u>Black's Dictionary</u> calls for discipline to be corrective and instructive. Skipping the first 6 steps called for in the Collective Bargaining Agreement between Labor and Management is neither corrective or instructive, its outright punitive. Management spread false rumor on what I had done, to be arrested, but then I showed the 7 pieces of "delayed" mail to fellow carriers and 40-50 families/individuals from mail route 2935, the post office wouldn't answer their questions on what had happened to me. Catlin gave his business cards to the carrier who took over for me while awaitg [sic] the outcome, but he refused to give them any information. Tom Wiegans from Spring Hill Lane was told at Post Office (mail handler) not to talk to me if he wanted to stay out of trouble. Mr. Burton & Mr. Saenz have been harassed for helg [sic] me with my case. In fact Mr. Burton 'was told by union office mark B. Hafvey that "that's what you get for trying to help Lynch," too way 3 day weekend on New Years 2005.

Because of my EEO complaint, I was never kept in the same office my first part of career. I was at Southglenn post office, and was not even allowed to finish preparation. I was sent to Littleton Main PO., and never given more than 30 hrs (usually 23-24), despite the Collective Bargaining Agreement, that all part-time flexible carriers shall aveage [sic] out available hours, several P.T.F.'s were getting 40 plus hours. I was sent to Highlands Ranch & for 6 weeks even sent out of area (Littleton Sub Group) to Aurora. I was alay [sic] able to stay clear of trouble and to what was as [sic] asked of me as an employee. Alan Catlin did not even consider other disciple [sic], firing was first option if you didn't do your job.

(Docket No. 6 at 9).

4

**Defendant's Motion for Summary Judgment**

Now before the court is the defendant's motion for summary judgment (Docket No. 38). Plaintiff has not filed a response. The court has carefully reviewed the motion and the case file and has considered applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions, and order that the motion for summary judgment be granted.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . .  These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), **except the mere pleadings by themselves**.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001)

(emphasis added), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Id. at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).

Title VII provides protection to employees against discrimination in employment on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1). The ADEA provides protection to employees against discrimination in employment on the basis of age.  Furthermore, "[b]oth Title VII and the ADEA forbid employers from

6

retaliating against an employee when that employee takes action in opposition to a discriminatory practice." Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1122 (10th Cir. 2007) (citing 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d)). "Title VII's anti-retaliation provision prohibits an employer from 'discriminat[ing]' against an employee because that employee has 'opposed' discrimination in the workplace, or because that employee has 'participated . . . in an investigation, proceeding, or hearing under this subchapter.'" Aquilino v. University of Kan., 268 F.3d 930, 932 (10th Cir. 2001) (citing 42 U.S.C. § 2000e 3(a)). In addition, "[t]he Rehabilitation Act prohibits discrimination against disabled persons who are otherwise 'qualified individuals' for employment by programs receiving federal financial assistance." Gonzagowski v. Widnall, 115 F.3d 744, 746 (10th Cir. 1997).

A plaintiff alleging employment discrimination may prove intentional discrimination by direct or indirect evidence. In the absence of direct evidence, which is the case here, the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), provides the framework for assessing indirect, or circumstantial evidence. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000). Under this analysis, the plaintiff bears the initial burden or presenting a *prima facie* case of discrimination. Id. at 1226.

A prima facie case of discrimination consists of evidence that "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." E.E.O.C. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). "In order to establish a prima facie case of retaliation, an employee must show that: '(1) []he

engaged in protected activity; (2) []he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse action.'" Timmerman, 483 F.3d at 1122-23 (quoting Duncan v. Mgr., Dep't of Safety, 397 F.3d 1300, 1314 (10th Cir. 2005)); Aquilino, 268 F.3d at 932 (citing Jeffries v. Kansas, 147 F.3d 1220, 1231 (10th Cir. 1998)).  "To establish a *prima facie* case under the Rehabilitation Act, a plaintiff must show (1) he is disabled within the meaning of the Act; (2) he is qualified for the job with or without accommodation; and (3) he was discriminated against because of the disability."  Cisneros v. Colorado, 2007 WL 2746756, *9 (D. Colo. Sept. 19, 2007) (citing Woodman v. Runyon, 132 F.3d 1330, 1338 (10th Cir. 1997)).  "The Rehabilitation Act defines disability as 'a physical or mental impairment that substantially limits one or more major life activities.' . . .  The standards used to determine violations are 'the standards applied under [T]itle I of the Americans with Disabilities Act of of 1990.'" Id. (quoting 29 U.S.C. §§ 705(9)(B) & 793(d)).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for its employment action." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1226 (quotation omitted).  See Selenke v. Medical Imaging of Colo., 248 F.3d 1249, 1264 (10th Cir. 2001) ("As with claims for discriminatory discharge, if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action.").  The Tenth Circuit has stated that

> [i]n determining whether a particular defendant has met its burden of coming forward with facially legitimate, nondiscriminatory reasons for the employment actions, we have said:

>> [t]he defendant's burden is merely to articulate through some

> proof a facially nondiscriminatory reason for the [action]; the
> defendant does not at this stage of proceedings need to
> litigate the merits of the reasoning, nor does it need to prove
> that the reason relied upon was bona fide, nor does it need
> to prove that the reasoning was applied in a
> nondiscriminatory fashion.  However, the proffered reason
> for the action taken against the minority employee must be
> reasonably specific and clear.

Aragon v. King Soopers, Inc., 2001 WL 1135593, **4 (10th Cir. Sept. 26, 2001) (quoting

EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir. 1992)).  The defendant's burden

"has been characterized as an 'exceedingly light' one."  Anaeme v. Diagnostek, Inc.,

164 F.3d 1275, 1279 (10th Cir. 1999).  "'[T]he determination that a defendant has met its

burden of production . . . involve[s] no credibility assessment.'"  Id. (quoting St. Mary's

Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

If the defendant satisfies this burden of production, the plaintiff "must then meet

[his] ultimate burden of persuading the court by demonstrating the proffered reason is

not the true reason either directly by showing a discriminatory reason more likely

motivated the employer or indirectly by challenging the employer's reason as unworthy

of credence."  McCowan v. All Star Maintenance, Inc., 273 F.3d 917, 922 (10th Cir.

2001) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 256, 248 (1981)).

"If the defendant is able to articulate a valid reason, the plaintiff can avoid summary

judgment 'only if []he is able to show that a genuine dispute of material fact exists as to

whether the defendant's articulated reason was pretextual.'"  Aragon, 2001 WL 1135593,

**4 (quoting Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999)).  "[T]he pertinent

question in determining pretext is not whether the employer was right to think that the

employee engaged in misconduct but whether the belief was genuine or pretextual."

<u>Dean v. The Boeing Co.</u>, 2003 WL 1439623, *5 (10th Cir. Mar. 21, 2003) (quoting

<u>Pastran v. K-Mart Corp.</u>, 210 F.3d 1201, 1206 (10th Cir. 2000) (internal quotation marks

omitted)).

> There are typically three ways a plaintiff makes a showing of pretext:
>
> (1) with evidence that the defendant's stated reason for the adverse
> employment action was false; (2) with evidence that the defendant acted
> contrary to a written company policy prescribing the action to be taken by
> the defendant under the circumstances; or (3) with evidence that the
> defendant acted contrary to an unwritten policy or contrary to company
> practice when making the adverse employment decision affecting the
> plaintiff.  A plaintiff who wishes to show that the company acted contrary to
> an unwritten policy or to company practice often does so by providing
> evidence that he was treated differently from other similarly-situated
> employees who violated work rules of comparable seriousness.

<u>Green v. New Mexico</u>, 420 F.3d 1189, 1193 (10th Cir. 2005) (quoting <u>Kendrick v. Penske</u>

<u>Transp. Servs., Inc.</u>, 220 F.3d 1220, 1230 (10th Cir. 2000)).

Defendant's Statement of Undisputed Material Facts, which was not disputed by

the plaintiff, includes the following.  Plaintiff was employed as a city letter carrier out of

the Littleton, Colorado, Post Office with the United States Postal Service ("USPS") from

on or about March 2, 1996, until on or about November 8, 2004, when he was removed

from federal service.  On or about June 24, 2004, plaintiff was investigated and

interviewed by the Postal Inspection Service for suspicion of theft and/or delay of mail

based on a Postal Inspector's observation of plaintiff engaging in activities consistent

with theft and/or delay of mail, and he was transported to the Denver City Jail.  The

USPS placed plaintiff in an off-duty, non-pay status effective June 25, 2004, at 7:30

a.m. pursuant to the Collective Bargaining Agreement and notified plaintiff he was not to

return to work until notified by management out of concern for loss of mail or funds

10

caused by plaintiff.  On July 15, 2004, in Criminal Action No. 04-cr-305F, United States

v. Lynch, plaintiff was indicted by the Grand Jury with a charge that he did "knowingly

and unlawfully secrete, detain and delay mail" in violation of 18 U.S.C. § 1703.

Following plaintiff's arrest, he was interviewed on August 4, 2004, by USPS and

Postal Inspection Service with regard to the charge.  At that time, plaintiff admitted to

detaining mail for personal use.  One week later, plaintiff was issued a Notice of

Removal for Unacceptable Conduct/Theft and Delay of U.S. Mail.  On or about

September 30, 2004, plaintiff entered a guilty plea to violating 18 U.S.C. § 1703.  In the

Plea Agreement, plaintiff did not dispute:

a.   On [June 23, 2004], Postal Inspectors prepared three First Class test letters.  One was addressed to Courtney Braun, 9615 Autumnwood Place, Littleton, CO 80129-5776 with a return address of AMC.  This letter was addressed to a customer who had recently moved and left no forwarding address.  The letter contained an entertainment card valued at $10.00, a letter addressed to Braun, and a transmitter beacon.  This transmitter emitted a signal that could be monitored by Postal Inspectors to determine the location of the test letter.

b.   On June 24, 2004, all three test letters were placed in the defendant's route for mail.  The defendant followed proper procedures for two of the test letters by placing them in the appropriate mail sortation case for proper treatment by a postal clerk.  However, with respect to the Braun test letter the defendant sorted it into his mail case for delivery even though he should have redirected this letter as undeliverable as addressed or to the Central Forwarding System to be returned to sender since the customer had recently moved and left no forwarding address.

c.   Postal Inspectors followed the defendant on his delivery route, monitoring the transmitter.  The Braun test letter was eventually placed in a neighborhood delivery unit at Fendlebrush Way and Foothills Canyon Boulevard in Highlands Ranch, Colorado.  The defendant continued his mail delivery throughout the day, then clocked off duty, returned to the delivery unit and removed the Braun test letter.  Postal Inspectors then placed the defendant under arrest; in plain view on his passenger seat was the Braun test letter.  Inspectors advised the defendant of his Miranda rights which he waived.  The defendant admitted taking the mail from his

route and detaining and delaying its delivery by leaving it on his route.
(Def.'s Ex. C - Plea Agreement).

In addition to that test letter found in plaintiff's vehicle at the time of his arrest,
plaintiff was in possession of other articles of mail that plaintiff had retained from his
route that day that had monetary value and/or were of personal interest to plaintiff,
including DVDs, coupons, and advertisements for dog equipment.  When plaintiff was
arrested, he was driving a vehicle that was neither marked nor being used as a USPS
vehicle at the time.

Plaintiff had signed documents when he was hired by the USPS acknowledging
that theft and/or delay of mail was grounds for removal and/or criminal prosecution.  On
or about October 29, 2004, the USPS and the National Associate of Letter Carriers'
Dispute Resolution Team resolved plaintiff's grievance concerning whether his
suspension and subsequent removal for theft and/or delay of mail was the appropriate
remedy.  That Dispute Resolution Team found that the USPS had just cause to issue
plaintiff an emergency suspension on June 25, 2004, and a Notice of Removal on
August 11, 2004, based on his conduct, described above, regarding theft and/or delay
of mail.  As part of the resolution of the grievance, plaintiff was given the opportunity to
resign from the USPS, but plaintiff refused.  Effective November 8, 2004, plaintiff was
removed from his federal employment with the USPS.  He was sentenced on December
17, 2004, for the violation of 18 U.S.C. § 1703 to time served, DNA collection, a $500
fine, and a $100 special assessment.

Plaintiff is a male who was over the age of 40 at all times relevant to this action.
He previously filed an Equal Opportunity Complaint which was resolved in 1996.  He

12

never informed the USPS that he had a disability and never requested accommodation for any alleged disability while employed by the USPS.  His employer (USPS) never regarded or treated him as disabled.  Plaintiff allegedly suffered temporary depression, but it was caused by his suspension from employment starting after June 24, 2004. Plaintiff testified at his deposition that from what he has read, he does not believe he would meet the criteria to bring a successful claim of discrimination based on disability. (Docket No. 38-13 at 13; Pl.'s Trans. at 90:12-13).

Defendant asserts that he "is entitled to summary judgment because the plaintiff was removed for cause from his federal employment as a postal carrier for unlawful delay of the mail in violation of 18 U.S.C. § 1703 - a charge which he admitted and to which he pleaded guilty." (Docket No. 38 at 1).  Defendant contends that plaintiff can not make a prima facie case for his claims that his removal was due to retaliation and age, race, and disability discrimination.  Furthermore, defendant asserts that plaintiff cannot overcome defendant's legitimate non-discriminatory reason for his removal, namely, plaintiff's criminal violation of the federal statute barring delay of the mail, 18 U.S.C. § 1703.

This court agrees with defendant and finds that the plaintiff has not established a *prima facie* claim for retaliation.  It is undisputed that plaintiff engaged in prior protected activity ending in 1996 and that he suffered an adverse employment action, namely, his termination in 2004.  Plaintiff, however, has not establish a causal connection between his removal and his prior EEO activity.  While a plaintiff can establish such causal connection by presenting evidence that "protected conduct [was] closely followed by adverse action," Haynes v. Level 3 Communications, LLC, 456 F.3d 1215, 1228 (10th

13

Cir. 2006), "[s]tanding alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time.  Otherwise, the plaintiff must offer additional evidence to establish causation."  Id. (quotation omitted).  "A seven-month period between protected activity and adverse action will not, by itself, establish causation."  Id.  In the instant case, there is at least eight years between plaintiff's prior EEO activity and his suspension and termination, which is too long for temporal proximity to establish causal connection.  Furthermore, plaintiff has not provided any additional evidence establishing retaliatory motive.  He has merely made conclusory assertions of retaliation in his Amended Complaint.

In any event, even assuming plaintiff has stated a *prima facie* case of retaliation, the court finds that the defendant has articulated a legitimate, nondiscriminatory reason for his suspension and then termination of the plaintiff, namely, his delay and/or theft of mail.  In addition, plaintiff has not met his ultimate burden of persuading the court by demonstrating the defendant's proffered reason is not the true reason either directly by showing retaliation more likely motivated the employer or indirectly by challenging the employer's reason as unworthy of credence.

The court further agrees with defendant and finds that plaintiff has not established a *prima facie* disability claim.  Plaintiff's purported disability, namely, depression, admittedly did not pre-exist his suspension and termination.  (Docket No. 38-13 at 35, Pl.'s Trans. at 155:3-4).  Rather, it was allegedly caused by his suspension and termination.  Furthermore, as noted by defendant, plaintiff admitted at his deposition that the delay of mail was why he was being disciplined, not the alleged depression.  (Docket No. 38-13 at 24, Pl.'s Trans. at 130:10-20).

14

In addition, the court agrees with defendant and finds that plaintiff has not established a *prima facie* claim of age discrimination.  As correctly noted by defendant, "[i]n termination cases, a prima facie case of age discrimination ordinarily requires the plaintiff to show that he or she was: (1) within the protected class of individuals 40 or older; (2) **performing satisfactory work;** (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age." Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008) (citation omitted) (emphasis added).  The court agrees with defendant that it cannot be disputed that violating a federal criminal statute by delaying and/or theft of the mail is not "performing satisfactory work."  In addition, plaintiff has not alleged any facts regarding the fourth element, that he was replaced by a younger worker.  Furthermore, even if the court were to find that plaintiff established a *prima facie* case with regard to his claim of age discrimination, the court once again finds that the defendant has articulated a legitimate, nondiscriminatory reason for its suspension and then termination of the plaintiff, namely, his delay and/or theft of mail.  In addition, plaintiff has not met his ultimate burden of persuading the court by demonstrating the defendant's proffered reason is not the true reason either directly by showing a discriminatory reason more likely motivated the employer or indirectly by challenging the employer's reason as unworthy of credence.

Finally, plaintiff has also not established a *prima facie* case of race discrimination. He has not even alleged facts showing that treatment for his misconduct was different than for those similarly situated.  As defendant asserts, plaintiff instead merely asserts conclusory and irrelevant allegations in his Amended Complaint, which are insufficient

15

to defeat a motion for summary judgment.  Even assuming plaintiff has stated a *prima facie* case of race discrimination, the court finds that once again that the defendant has articulated a legitimate, nondiscriminatory reason for its suspension and then termination of the plaintiff, namely, his delay and/or theft of mail.  In addition, plaintiff has not met his ultimate burden of persuading the court by demonstrating the defendant's proffered reason is not the true reason either directly by showing a discriminatory reason more likely motivated the employer or indirectly by challenging the employer's reason as unworthy of credence.

In sum, this court finds there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that the Defendant's Motion for Summary Judgment (Docket No. 38) is **GRANTED**.  Judgment shall enter in favor of the defendant and against the plaintiff. Defendant may have his costs to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  It is further

**ORDERED** that the Final Pretrial Conference set on June 18, 2009, at 9:00 a.m. is vacated.

Dated:     May 29, 2009              s/ Michael J. Watanabe
           Denver, Colorado         Michael J. Watanabe
                                    United States Magistrate Judge